E-FILED
Friday, 29 January, 2016  04:03:55 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| RICARDO HECTOR ABELLAN and TRINIDAD ALBA NAVARRO DE ABELLAN, TRUSTEES OF THE ABELLAN FAMILY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>HRDS LE ROY IL, LLC AND LAVELO PROPERTY MANAGEMENT, LLC,<br><br>Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Ricardo Hector Abellan and Trinidad Alba Navarro De Abellan, Trustees of The Abellan Family Trust (together "Plaintiffs") file this Complaint against Defendants HRDS Le Roy IL, LLC and Leonid Chernoy (collectively, "Defendants"), and state as follows:

### PARTIES

1. Plaintiffs are residents of the State of California.

2. HRDS Le Roy IL, LLC is a dissolved Wyoming limited liability company that may be served with a copy of the summons and Complaint by serving its registered agent for process, Leonid Chernoy at 1603 Capital Ave. Ste. 314 561, Cheyenne, WY 82001, or wherever he may be found. The members of HRDS are citizens of Wyoming and New York.

3. Lavelo Property Management, LLC, as successor to HRDS Le Roy IL, LLC ("Lavelo"), is a Wyoming limited liability company that may be served with a copy of the summons and Complaint by serving its registered agent for process, Leonid Chernoy at 1603 Capital Ave. Ste. 314 561, Cheyenne, WY 82001, or wherever he may be found. Lavelo was the

1

managing member of HRDS and is the successor entity to HRDS.  The members of Lavelo are citizens of Wyoming and New York.  Lavelo and HRDS Le Roy IL, LLC are hereinafter collectively referred to as "HRDS."

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiffs and Defendants and the amount in controversy exceeds $75,000.

5. The Court has personal jurisdiction over all Defendants as the Defendants have purposefully availed themselves of doing business in the State of Illinois, owned, and/or operated the relevant property and business at issue in Le Roy, McLean County, Illinois.

6. Venue is proper in the United States District Court for the Central District of Illinois, Peoria Division, under 28 U.S.C. § 1391(b)(2) because the property which is the subject of this action is located in this district.

## CONDITIONS PRECEDENT

7. All conditions precedent to the maintenance of this cause of action and Plaintiffs' recovery thereon, including attorneys' fees, have been performed or have occurred.

## JURY DEMAND

8. Plaintiffs demand a trial by jury on all issues triable to a jury in this matter.

## FACTUAL BACKGROUND

9. In February 2015, Plaintiffs were searching for a real estate property to purchase for the purpose of creating a source of recurring monthly income.  As part of their search, Plaintiffs hired a commercial real estate broker who delivered Plaintiffs marketing materials regarding a property located at 419 S. Chestnut, Le Roy, Illinois 61752 (the "Property").  The

Property was owned by HRDS and listed by its brokers Zacharia and DZ Net (together the "Broker") on behalf of the HRDS.  Generally, Plaintiffs understood and contend that any and all representations made by the Broker were made on behalf of HRDS and represented its understandings of all facts surrounding the Property.

10. To attract potential purchasers in February and March 2015, HRDS and Broker represented to potential purchasers that the Property was currently under construction, would soon reopen, and when reopened, would be operated as a Hardee's restaurant by members of a highly experienced and successful restaurant franchise operations.  HRDS and Broker also represented that the Property was leased with 18 years remaining on its base term and was secured by the guaranties of three successful and high net worth guarantors.  Specifically, the HRDS and Broker represented that the tenant of the property was MIH Star HD, LLC ("MIH") and that the lease was secured by personal guarantors of MIH's owners, Jason LeVecke and Carl LeVecke (together the "LeVeckes"), and further secured by the guaranty of Frontier Star 1, LLC ("Frontier Star 1"), one of the LeVeckes' business entities (collectively the "Guarantors").  HRDS and Broker provided Plaintiffs with the signed and dated financial statements of the individual Guarantors.  HRDS and Broker also represented to Plaintiffs that the Guarantors were financially sound and part of established and stable restaurant franchise operation.  The financial statements provided by HRDS and Broker for Frontier Star 1 showed an entity with substantial assets and operating profits and a net worth that were increasing annually.  HRDS and Broker further represented that the LeVeckes owned and operated 200+ Carl's Jr.'s and Hardee's restaurant locations throughout the United States.  None of the information provided by HRDS and Broker about MIH or the Guarantors suggested that any of the entities or individuals were experiencing any financial distress.

11.     HRDS and the Broker further represented that MIH and the Guarantors were in the process of completing construction at the Property and would soon reopen the Property as a Hardee's restaurant.  Leonid Chernoy, the manager and a principal of HRDS further represented that he owned ten (10) similar properties leased to MIH, with leases that were also guaranteed by Guarantors.  Further, HRDS and Broker represented that MIH and Guarantors were "great tenants," who always timely paid rent and taxes, were in a "great" financial condition, and that they were currently paying HRDS triple net rent for the Property, even while it remained under construction.

12.     In reliance on HRDS's and Broker's representations regarding the potential income stream from the Lease and the financial condition of MIH and the Guarantors, Plaintiffs entered a Letter of Intent (the "LOI") with HRDS on or about May 6, 2015.  Specifically, in deciding to enter into the LOI, Plaintiffs relied on the HRDS's and Broker's representations regarding the Property, the Lease, the tenant, and the Guarantors.  Those representations included: a) that MIH was the tenant; b) the financial stability and prior business experience of the Guarantors, c) the financial statements relating to the Guarantors, d) MIH's and the Guarantors intention to complete the construction at the Property, e) that the construction at the Property was near completion, and f) that MIH and the Guarantors intended to open and operate a Hardee's restaurant at the Property during the remaining term of the Lease.  Plaintiffs also relied on the HRDS's and Broker's representations regarding MIH and the Guarantors experience, expertise, and success in the restaurant industry.

13.     Prior to Plaintiffs closing on the purchase of the Property on June 9, 2015, HRDS and Broker continued to represent to Plaintiffs that MIH and the Guarantors were in the process

of completing the construction at the Property and that the restaurant would open at the Property during June 2015.

14. HRDS delivered to Plaintiffs the Lease Agreement for the Property between HRDS, as landlord, and MIH, as tenant, dated June 14, 2013 (the "Lease").  The Lease had an original term of twenty (20) years.  The Lease required MIH to make monthly rent payments to HRDS.  The Lease also provided that the permitted use of the Property was as a restaurant.  HRDS also delivered to Plaintiffs three separate Unconditional Guaranty of Payments, dated June 14, 2013, (collectively the "Guaranties"), executed by the Guarantors.  In the Guaranties, the Guarantors unconditionally guaranteed and promised to pay HRDS "all sums, including without limitation, rent, taxes, insurance premiums, impounds, late charges and interest, damages, costs, fees and all other sums which may at any time be due to [l]andlord" pursuant to the Lease.  The Guarantors further unconditionally guaranteed "the truth and accuracy of all representations, warranties, and certifications of Tenant [MIH], the satisfaction of all conditions by Tenant [MIH] and the full and timely performance of all obligations to be performed by Tenant [MIH] under or pursuant to the Lease."

15. On or about June 9, 2015, HRDS sold the Property to Plaintiffs, and Plaintiffs purchased and paid for the Property (the "Sale Transaction").  As part of the Sale Transaction, HRDS and Plaintiffs executed an Assignment and Assumption of Lease and Guaranties.  Pursuant to the Assignment and Assumption of Lease and Guaranties, HRDS assigned and transferred to Plaintiffs all rights, remedies, and obligations of HRDS under the Lease and Guaranties.

16. On July 1, 2015, MIH failed to make its first rent payment to Plaintiffs due and payable on July 1, 2015.

131274126v1 1645

17. On July 27, 2015, Frontier Star LLC and Frontier Star CJ, LLC (the "Debtors") filed for bankruptcy in the United States Bankruptcy Court for the District of Arizona, Case No. 2:15-bk-09383 (the "Bankruptcy Case"). Neither MIH nor any of the Guarantors initially filed for protection from their creditors.[1] On August 18, 2015, Plaintiffs received a Notice of Filing of Debtor's First Motion to Reject Commercial Real Property Lease and Debtor's First Motion to Reject Commercial Lease, filed by the Debtors Frontier Star LLC and Frontier Star CJ, LLC in the Bankruptcy Case on August 14, 2015. The Property and the Lease were listed by the Debtors as a lease to be rejected in the Bankruptcy Case, even though none of the Debtors were the named tenant under the Lease.

18. On August 25, 2015, more than two months after close of the Sale Transaction, counsel for the Debtors provided counsel for Plaintiffs with an Assignment and Assumption of Lease Interest (the "Assignment") allegedly entered into by MIH and Frontier Star, LLC purportedly dated June 14, 2013. Notwithstanding all of the representations, warranties, covenants, and agreements in the Sale Transaction and in the Assignment and Assumption of Lease and Guaranties, the Assignment was not presented to Plaintiffs prior to their entering into the LOI, during due diligence, or before they consummated the Sale Transaction for the Property and purchased and paid for the Property. To the contrary, HRDS and Broker repeatedly represented that MIH was the tenant under the Lease and never identified Frontier Star, LLC or referred to any Assignment between those two entities. On August 29, 2015, Jason LeVecke notified Plaintiffs through an email to their representative that the Property had been abandoned, that construction would not be completed, and that he and the alleged Debtor tenant were surrendering the Property to Plaintiffs.

---

[1] Frontier Star 1, LLC eventually filed for bankruptcy protection in November 2015.

19. Plaintiffs contend that both Plaintiffs and Defendants were mutually mistaken regarding material information about the Property, the Lease, MIH, the Guarantors, and the Assignment, including, but not limited to the correct tenant, the financial condition of the tenant and the Guarantors, construction at the Property, and the tenant's and Guarantors' intention to complete the construction at the Property and to open and operate a Hardee's restaurant at the Property for the remaining term of the Lease.

**Count I**
**RESCISSION – MUTUAL MISTAKE**

20. Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1-19 as though fully set forth herein.

21. Rescission of the Sale Transaction between Plaintiffs and HRDS is proper under Illinois law because the parties were mutually mistaken about facts that materially affected the Sale Transaction. It appears, based on the Debtors' representations and the Assignment, that Plaintiffs and HRDS were both mistaken about the correct tenant of the Property because both believed at the time of the Sale Transaction that MIH was the tenant under the Lease. The Assignment indicates, unbeknownst to Plaintiffs and HRDS, that MIH assigned its rights under the Lease to Frontier Star, LLC on June 14, 2013.

22. Further, Plaintiffs and HRDS were both mistaken about the tenant's (whichever entity) and Guarantors' financial condition because they mutually believed that the Guarantors had substantial financial assets and operated a successful, profitable, and growing restaurant franchise operation. Neither Plaintiffs nor HRDS were aware that the Guarantors, specifically Frontier Star 1 prior to the Sale Transaction: a) were in financial difficulty, b) had struggled to make payroll and to perform normal operations at their restaurants, and c) had to restructure their relationship with and were in default of the franchise agreement with their franchisor, CKE.

Plaintiffs and HRDS were also not aware that the assets of Frontier Star 1 had been transferred to other entities prior to the Sale Transaction, leaving nothing but a shell entity that offered Plaintiffs no security under the Lease.

23.   Further, at the time of the Sale Transaction, both HRDS and Plaintiffs were under the mistaken belief that construction at the Property was active and near completion.  Further, HRDS and Broker mistakenly believed that MIH and the Guarantors intended to complete construction and that the Property would be reopen as a Hardee's restaurant in or around June 2015 and, thereafter, MIH and the Guarantors would operate it for the remaining term of the Lease.  HRDS and Broker made numerous representations that construction was in process, that it would soon be complete, and that MIH and the Guarantors intended to open and operate the Property as a Hardee's restaurant.  Based HRDS's and the Broker's mistaken representations, Plaintiffs also believed at the time they entered into the Sale Transaction that construction at the Property was active, that MIH and the Guarantors intended to complete the construction, and that they would soon open and operate the Property as a Hardee's restaurant for the remaining term of the Lease.

24.   All of these facts were material to Plaintiffs because they had a significant impact on the financial viability and security of the Lease, the value of the Property, and the ability for the Property to produce a stable and viable recurring rent stream to Plaintiffs.  Plaintiffs' sole purpose for entering the Sale Transaction was to earn income from the Lease.  Given the mutual mistakes and the materiality of those mistakes as related to the Sale Transaction, the Sale Transaction should be rescinded.  The mutual mistakes have dramatically altered Plaintiffs' benefit of the bargain by destroying the income potential Plaintiffs sought when they purchased

the Property and any recourse they had to enforce the Guaranties.   In granting rescission, HRDS can be placed in its pre-contract status quo position as owner of the Property.

25.     For the foregoing reasons, Plaintiffs ask this Court to rescind the Sale Transaction and place both Plaintiffs and the HRDS back to their presale positions.

## COUNT II
## ATTORNEYS' FEES

26.     Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1-25 as though fully set forth herein.

27.     As a result of the Defendants' the mutual mistakes, Plaintiffs retained the services of the undersigned law firms to enforce their rights and to protect their legal interests.  Plaintiffs have agreed to pay these law firms reasonable and necessary attorneys' fees.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request the Court order the rescission of the Sale Transaction.  Further, Plaintiffs request the Court grant all other and further relief to which Plaintiffs may be justly entitled.

## JURY DEMAND

**Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs hereby demand a jury trial on all issues triable of right by jury.**

Respectfully submitted,

**HINSHAW & CULBERTSON LLP**

By: /s/Charles R. Schmadeke
J. William Roberts
broberts@hinshawlaw.com
Charles R. Schmadeke
cschmadeke@hinshawlaw.com
400 South Ninth Street, Suite 200
Springfield, IL 62701
Tel: (217) 528-7375

And

**KANE RUSSELL COLEMAN & LOGAN PC**

Robert N. LeMay
rlemay@krcl.com
Texas State Bar No. 12188750
*Pro Hac Vice pending*
Bradford T. Smith
bsmith@krcl.com
Texas State Bar No. 24070634
*Motion Pro Hac Vice Pending*
Jaime DeWees
jdewees@krcl.com
Texas State Bar No. 24097593
*Motion Pro Hac Vice Pending*

3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas  75201
Tel: (214) 777-4200
Fax: (214) 777-4299

**ATTORNEYS FOR PLAINTIFFS**