## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| **RICARDO HECTOR ABELLAN and** ) | |
| **TRINIDAD ALBA NAVARRO DE** ) | |
| **ABELLAN, TRUSTEES OF THE** ) | |
| **ABELLAN FAMILY TRUST,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Case No. 16-1037** |
| ) | |
| **HRDS LE ROY IL, LLC, LAVELO** ) | |
| **PROPERTY MANAGEMENT, LLC,** ) | |
| **CSJR PHOENIX AZ, LLC, LEONID** ) | |
| **CHERNOY, DAVID ZACHARIA,** ) | |
| **DZ NET LEASE REALTY, LLC, and** ) | |
| **JC123 HOLDINGS, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Presently before the Court are Plaintiff's Motion to Alter or Amend Judgment (ECF No. 121), Plaintiff's Motion for Attorney Fees and Costs (ECF No. 122), Plaintiff's Motion for Bill of Costs (ECF No. 128), Defendant's Motion for New Trial (ECF No. 133), and Defendant's Motion for Judgment as a Matter of Law (ECF No. 135).  For the reasons stated herein, Defendant's Motion for New Trial and Motion for Judgment as a Matter of Law are DENIED.  Plaintiff's Motion to Alter or Amend Judgment is GRANTED and Plaintiff is awarded prejudgment interest in the amount of $164,079.98.  Plaintiff's Motion for Attorney Fees is GRANTED IN PART AND DENIED IN PART and Plaintiff is awarded attorney fees in the amount of $627,702.15.  Finally, Plaintiff's Motion for Bill of Costs is GRANTED IN PART AND DENIED IN PART and Plaintiff is awarded costs in the amount of $29,061.28.

1

# BACKGROUND

On June 9, 2015, Ricardo and "Trini" Abellan closed on their $1,550,000 purchase of a triple net lease commercial property in Le Roy, Illinois. The Abellans were California residents looking for a safe and secure investment property for the purpose of legally avoiding capital gains taxes on the profit they made from selling a rental property they owned in Los Angeles, and in order to provide a steady stream of income as they navigated their way through retirement. A triple net lease was particularly appealing to the Abellans because under such a lease the tenant is responsible for the real estate taxes, building insurance, and maintenance of the property in addition to any standard fees that are expected under the purchase agreement (e.g., rent, utilities, etc.).[1] The Le Roy property was also attractive because the commercial space offered a prospective fixed rate of return in terms of monthly rental income in the amount of $8,250.

The Abellans were initially drawn to the Le Roy property based on an advertisement published by the seller's (Lavelo[2]) real estate broker, David Zacharia on March 4, 2015. The advertisement—in the form of an email blast—listed a Hardees for sale in Le Roy, Illinois, with eighteen years remaining on the tenant's lease, a 6.35% rate of return, and personal and corporate lease guaranties.[3] The advertisement also stated the property was a former restaurant being reimaged as a Hardee's and the store opening was estimated to take place in April 2015. Finally, the advertisement listed that the tenant/guarantor operates 201 Carl Jr's and Hardees in Arizona, Texas, Illinois, Missouri, Kentucky, and Indiana.

What the advertisement failed to mention (and the Abellans learned only after purchase), was that the Le Roy property had remained vacant without an operating tenant since sometime in

---

[1] As defined in the Parties' Amended Joint Glossary of Terms. (ECF No. 94 at 1.)
[2] Lavelo Property Management, LLC, is the successor to HRDS Le Roy IL, LLC. For the sole purpose of this Memorandum Opinion and Order, Lavelo Property Management, LLC, will be referred to as "Lavelo".
[3] Pl.'s Ex. 5 at 1-2.

2012.  The Abellans were also unaware that Lavelo was receiving rent from its tenant despite the fact that the tenant never operated a restaurant (or any other business) at the property.  Only after their purchase of the property did the Abellans become aware that renovation construction at the site had ceased in June 2014.  The Abellans also discovered that less than two months after their purchase of the Le Roy property, the parent company of the tenant/franchisee filed for Chapter 11 bankruptcy, and six months after that, the tenant's managing member and one of the guarantors of the lease declared personal bankruptcy.[4]  To add insult to injury, the Abellans also discovered that only two years prior, their tenant had initially owned and purchased the same property for $325,000. One month after purchase, the tenant then sold the property to Lavelo for $1,100,000; realizing a $775,000 profit.[5]

Defendant Lavelo, via its managing partner, Leonid "Lenny" Chernoy, asserts the Abellans should have done their due diligence before buying the Le Roy property and asked more questions.  Chernoy argues he was merely a messenger passing along what turned out to be faulty information before the Purchase Agreement closed.  Chernoy also contends he is just a young man, not trained in real estate or law, who was simply looking after investments made by his parents in their mutually formed LLC.  Finally, Chernoy asserts that many excellent companies have fallen on hard times and declared bankruptcy.  He argues that he should not be held responsible for the unfortunate circumstances that befell Plaintiff.  The Abellans disagree and filed suit against Defendant Lavelo and Mr. Chernoy individually, among others.[6]

---

[4] Case No. 16-bk-00639 (Bankr. D. Ariz. Jan. 25, 2016).
[5] In a typical sale-leaseback arrangement, profits are used to develop commercial operations on the property, justifying the exponential increase in sale price; however, the tenant failed to reinvest the profits in the scenario at hand.
[6] Plaintiff originally sought claims against (i) Lavelo Property Management, LLC (successor to HRDS); (ii) CSJR Phoenix AZ, LLC; (iii) David Zacharia; (iv) DZ Net Lease Realty, LLC; and (v) JC123 Holdings, LLC.

## PROCEDURAL HISTORY

On May 18, 2017, Plaintiff filed his Fourth Amended Complaint alleging six claims against Defendant for Defendant's alleged breach of the Purchase Agreement: (i) rescission of contract due to mutual mistake; (ii) rescission of contract due to fraudulent inducement; (iii) breach of contract; (iv) fraud; (v) civil conspiracy; and (vi) equitable relief in the form of constructive trust. (ECF No. 56.) Approximately seven months later, Defendants filed a motion for summary judgment on Plaintiff's fraud and conspiracy claims. (ECF No. 59.) On January 12, 2018, Plaintiff responded to Defendants' summary judgment motion and abandoned his claim for civil conspiracy. (ECF No. 62) Fourteen days later, Defendants filed their reply. (ECF No. 63.)

On March 22, 2018, the Court issued an Order denying Defendants' motion for summary judgment on Plaintiff's fraud claims and granting it on Plaintiff's conspiracy claim. (ECF No. 66.) Plaintiff's civil conspiracy claim was dismissed with prejudice, along with Defendant JC123 Holdings, LLC. *Id.* On April 3, 2018, Defendants David Zacharia, DZ Net Lease Realty, and CSJR Phoenix AZ, LLC were dismissed by stipulation. (ECF No. 69.) Plaintiff's claims of mutual mistake, breach of contract, and fraud proceeded to trial against Lavelo and Leonid Chernoy.

A jury trial was held on June 13-19, 2018, with the jury returning a verdict in favor of Plaintiff and finding (i) Plaintiff proved by clear and convincing evidence he and Lavelo were mistaken about a fact material to the Purchase Agreement; (ii) Plaintiff proved by a preponderance of the evidence Lavelo breached the Purchase Agreement, which caused $1,990,011.72 in damages to Plaintiff; and (iii) Plaintiff proved by clear and convincing evidence Lavelo and Chernoy committed fraud. (ECF No. 100.) Although the jury found in favor of Plaintiff on his fraud claims, it did not award damages for those claims. *Id.* at 4-7. On July 19, 2018, Defendant filed a motion for remittitur (ECF No. 112), which the Court granted in the amount of $700,670.00 (ECF No. 114

at 8).  The Court ruled that Plaintiff was not entitled to both rescission of the Purchase Agreement[7] and a monetary award for Defendant's breach of contract, as rescission is essentially an equitable remedy, and will not ordinarily be invoked where monetary damages will adequately compensate a party to the contract.  (ECF No. 114 at 3-5.)  On August 30, 2018, the Court entered an Amended Judgment of $1,289,341.72 in favor of Plaintiff and against Defendant Lavelo Property Management, LLC.  (ECF No. 129.)

After initial entry of Judgment by this Court on August 14, 2018, both Parties filed a number of post-trial motions.  Of those motions, Defendant's Motion for Judgment as a Matter of Law (ECF No. 135); Defendant's Motion for New Trial (ECF No. 133); Plaintiff's Motion to Alter or Amend Judgment (ECF No. 121); Plaintiff's Motion for Attorney Fees and Costs (ECF No. 122); and Plaintiff's Bill of Costs (ECF No. 128), are now before the Court.

## DISCUSSION

## I.     Defendant's Motion for Judgment as a Matter of Law [135]

Defendant filed its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50, arguing that Plaintiff failed to prove Lavelo breached the Purchase Agreement between the Parties, or incurred any damages as a result of the alleged breach.  Plaintiff responds asserting he adduced sufficient evidence at trial to prove Lavelo breached the Purchase Agreement and caused him damages, and also proved by a preponderance of the evidence every essential element for his claim of breach of contract.  Plaintiff argues the Court should refrain from altering the Final Judgment based on the jury's verdict and should deny Defendant's Motion in its entirety.  Here, the Court finds sufficient evidence was proffered at trial for the jury to determine Lavelo

---

[7] A permissible remedy for a breach of contract claim pursuant to mutual mistake is rescission of the contract.

breached its Purchase Agreement with Plaintiff and Plaintiff suffered resultant damages. As such, Defendant's Motion for Judgment as a Matter of Law is denied.

If a party files a motion for judgment as a matter of law during trial under Rule 50(a), Rule 50(b) authorizes the party to renew that motion after the jury returns a verdict. FED. R. CIV. P. 50(b). If a party files a Rule 50(b) motion, the court may allow the judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law after the jury returns a verdict. *Id.* A Rule 50(b) motion is simply a renewal of a preverdict Rule 50(a) motion:

> Rule 50(b) is amended to permit renewal of any Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all the evidence. *Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.* The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available.

Fed. R. Civ. P. 50, advisory committee's note (2006 amend.) (emphasis added); *Passananti v. Cook County*, 689 F.3d 655, 660 (7th Cir. 2012); *Brooks v. O'Leary*, No. 93-3559, 1994 WL 468903, at *3 (7th Cir. 1994); *Williams v. Fico*, No. 11 C 1105, 2015 WL 3759737, at *1 (N.D. Ill. June 15, 2015).

"A motion for judgment as a matter of law should be granted only where there can be but one conclusion from the evidence." *McRoberts Software, Inc. v. Medial 100, Inc.*, 329 F.3d 557, 564 (7th Cir. 2003) (citing *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 636 (7th Cir. 1996)). In reviewing a jury's verdict, the court considers the evidence in the light most favorable to the prevailing party. *McRoberts*, 329 F.3d at 564. The verdict will only be reversed "if there is no legally sufficient evidentiary basis to support [it]." *Id.* A reviewing court must be particularly careful to avoid supplanting its view of the credibility or the weight of the evidence for that of the jury. *Id.*; *see also Minnesota Mining & Manufacturing Co. v. Pribyl*, 259 F.3d 587,

595 (7th Cir. 2001). While the court reviews the record as a whole, "it must disregard all evidence favorable to the moving party that the jury [was] not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000). "[T]he jury is the body best equipped to judge the facts, weigh the evidence, determine credibility, and use its common sense to arrive at a reasoned decision." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 925 (7th Cir. 2000). "Overturning a jury verdict is not something [the courts] do lightly." *Id.*

Lavelo Property Management, LLC, proffered two arguments at trial, in the form of a written motion for directed verdict, pertaining to Plaintiff's breach of contract claim. (*See* ECF No. 97 at 5-6.) It argued there was insufficient evidence presented at trial that demonstrated (i) the seller knew there was a breach of section 18.1.4 of the lease at the time of signing the Purchase Agreement; and (ii) Plaintiff's Exhibits 17 and 19 constitute "notices" within the meaning of Section 10(B) of the Purchase Agreement. *Id.* Lavelo now offers eleven arguments to support its contention that it should be granted judgment as a matter of law. (*See* ECF No. 136 at 3-21.) However, since a Rule 50(b) motion is a renewal of the preverdict motion, and can only be granted on grounds advanced in that motion, only the arguments that expand on the justifications included in Defendant's original Rule 50 motion will be addressed by the Court. Additionally, the Court only addresses Defendant's first argument for JNOV, as the evidence adduced at trial provides a legally sufficient basis to support the jury's verdict that Defendant breached the contract.

Lavelo argues, in numerous ways and without supporting caselaw, that Plaintiff failed to demonstrate it was aware that MIH STAR HD, LLC ("MIH") defaulted under the Lease, and Lavelo subsequently breached the Seller's Representations and Warranties clause of the Purchase Agreement. (ECF No. 136 at 3-14.) The pertinent Representations and Warranties clause of the Purchase Agreement provides:

10. <u>Seller's Representations and Warranties</u>. Seller makes the following representations and warranties to Buyer:

> B.  There is no default by Seller or, to Seller's knowledge, by MIH STAR HD, LLC under the Lease. Seller shall promptly deliver to Buyer a copy of any notice (including without limitation, a notice of default) received from MIH STAR HD, LLC or delivered to MIH STAR HD, LLC relating to the Lease.

And, the portion of the Lease that addresses tenant default states:

> 18.1  <u>Tenant Default</u>.  Each of the following events shall constitute an Event of Default:

> > 18.1.4  If Tenant fails to continuously operate its business within the Premises except for temporary periods of closure caused by casualty, or temporary and reasonable periods of remodeling, not to exceed ninety (90) days in any Lease Year without first obtaining Landlord's written approval which approval shall not be unreasonably withheld, so long as Tenant is diligently pursuing re-opening of the Premises.

Here, Plaintiff submitted sufficient evidence at trial for a reasonable jury to determine that Lavelo breached the Representations and Warranties clause of the Purchase Agreement, as its managing partner, Lenny Chernoy, testified he was aware that MIH had no operations for over 90 days, and never opened for business since Chernoy had purchased the property in July of 2013. (Tr. 594:23-595:1; 600:8-11.[8]) Chernoy also testified that MIH failed to open restaurants in Glen Ellyn, Lisle, Carbondale, and Springfield, Illinois after he purchased properties in those locations as well. (Tr. 563:18-22.) In terms of demonstrating damages from the breach of contract, Plaintiff testified that after his purchase of the Le Roy property, he failed to receive *any* rent payments from the tenant. (Tr. 133:2-4.) Additionally, Plaintiff and witness, Jeff Johnson,[9] testified that the condition of the property was of one in the midst of half-finished renovations, including exposed walls, unfinished rooms, and an uninstalled sign sitting in the front lot. (Tr. 132:24-133:1; 439:19-

---

[8] For purposes of this Order, the transcript of the jury trial will be referenced as "Tr."  Transcripts of the jury trial can be found on the case docket under ECF Nos. 107-111.

[9] General contractor hired by Lavelo to renovate the Le Roy property.

25; 471:12-473:10.)  Plaintiff also had a tax assessment completed on the Le Roy property in 2016 which appraised its value at $321,000; which was $1,229,000 less than the price for which the property was purchased.  (Tr. 738:11-15.)  That information alone was sufficient for the jury to find that Plaintiff incurred significant damages as a result of the contract breach.

Finally, the Court fails to credit Defendant's argument that Lavelo waived MIH's default by accepting its subsequent rent payments.  It also rejects Lavelo's argument—and the jury was not required to believe—that default under the clear and unambiguous language of the Lease applied only to closure periods after the restaurant had first been opened.  Furthermore, Defendant uses *Midland Management Co. v. Helgason*, 630 N.E.2d 836 (Ill. 1994), in an attempt to bolster its argument that Lavelo was not required to disclose MIH's lease default to Plaintiff.  However, in *Midland*, the Illinois Supreme Court held that a landlord's "[a]cceptance of rent accruing subsequent to a breach" may prove waiver of the breach, *which operates to reinstate the lease*.  *Id.* at 839.  In the case at hand, Lavelo did not attempt to terminate its Lease agreement with MIH due to the tenant's breach.  Instead, Lavelo argues that a breach *never occurred* because it accepted rent payments despite MIH's breach.  The facts in *Midland* are distinct from the facts in the instant case; the holding in *Midland* is inapposite, and misapplied, to the Motion at hand.  Accordingly, Defendant's Motion for Judgment as a Matter of Law is denied in its entirety.

## II.     Defendant's Motion for New Trial [133]

Defendant filed its Motion for New Trial pursuant to Federal Rule of Civil Procedure 59(a), outlining three arguments why it should be granted a new trial.  (ECF No. 134 at 1-13.)  In its Motion, Defendant also asserted, "Lavelo's Rule 59 Motion is brought in the alternative to Lavelo's Rule 50 Motion and need only be conditionally ruled on if the Court grants Lavelo's Rule 50 Motion for Judgment as a Matter of Law."  *Id.* at 1.  In the alternative, Defendant included a

Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e), arguing Judgment should be amended to reflect Lavelo's limited liability for damages under Wyoming law. (*Id*. at 1, 14-16; ECF No. 133 at 3.) As a preliminary matter, the Court denies Defendant's Motion for New Trial as moot since the Court has concluded that Lavelo is not entitled to judgment as a matter of law. *See infra* pp. 5-8.

As it relates to Defendant's Motion to Alter or Amend Judgment, "Rule 59(e) permits a district court to entertain a motion to alter or amend a judgment." *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). "A claimant can invoke the rule to direct a court's attention to matters such as newly discovered evidence or a manifest error of law or fact." *Id.* (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191-92 (7th Cir. 1990)). "The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Id.* (citing *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986)). However, the rule "cannot be used to argue a case under a new legal theory" or "be used to raise arguments which could, and should, have been made before the judgment issued." *Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986).

Defendant has previously raised its contention that Lavelo's liability is limited pursuant to the Wyoming Limited Liability Company Act, Wyo. Stat. Ann. § 17-29-704 (West 2018), in its Motions *in Limine*,[10] during trial,[11] and now in a post-trial motion. As both Parties have agreed, and the Court has repeatedly found, this is a suit for breach of contract in federal court by virtue of diversity jurisdiction. *See infra* pp. 12-13. The breach of contract claim is governed by Illinois law pursuant to the *Erie* doctrine. *Id.* In Illinois, the issue of statutory interpretation is a question

---

[10] Denied; ECF No. 73 at 6-7.
[11] Denied; Tr. 811:5-24.

of law.  *Commonwealth Edison Co. v. Illinois Commerce Commission*, 16 N.E.3d 801, 808 (Ill. App. Ct. 2014).

The Illinois Appellate Court has held "[t]he cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent."  *Id.*  "The best indicator of the legislator's intent is the express language of the statute, which should be given its plain and ordinary meaning."  *Id.*  "When the language of a statute is clear and unambiguous, it must be applied without resort to other aids of construction."  *Id.*

The Wyoming statute at hand provides: "A claim not barred under this Section or W.S. 17-29-703(c) may be enforced [a]gainst a *dissolved limited liability company*, to the extent of its undistributed assets."  Wyo. Stat. Ann. § 17-29-704(d)(i) (West 2018) (emphasis added).  Here, the Court has altered judgment to reflect—and Defendant has asserted innumerable times—that Lavelo Property Management, LLC is a successor to HRDS Le Roy IL, LLC.  There is no evidence in the record suggesting that Lavelo, LLC has also been dissolved.  Therefore, the aforementioned statute does not apply to the Judgment.

Finally, even if the plain language of the Wyoming statute does not preclude a limitation on the liability of Lavelo, Illinois law does.  In *Vernon v. Schuster*, 688 N.E.2d 1172 (Ill. 1997), the Illinois Supreme Court recognized "[t]he well-settled general rule is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation."  *Id.* (citing *Nilsson v. Continental Machine Manufacturing Co.*, 621 N.E.2d 1032 (1993)).[12]  This "rule of successor corporate nonliability developed as a response to the need to protect *bonafide* purchasers from unassumed liability and was designed to maximize the fluidity of corporate assets."  *Id.* (internal citations omitted) (emphasis added).  However, there are

---

[12] Although there is no evidence in the record to conclude Lavelo *purchased* the assets of HRDS, for the purposes of this Motion, the Court will assume it has.

exceptions to the rule, two of which provide that the rule is not applicable: (i) "where the purchaser is merely a continuation of the seller;" or (ii) "where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Id.* (citing *Steel Co. v. Morgan Marshall Industries, Inc*., 662 N.E.2d 595, 599 (Ill. App. Ct. 1996)). The reasoning behind the exceptions explains:

> The exception is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of the reach of the predecessor's creditors. To allow the predecessor to escape liability by merely changing hats would amount to fraud. Thus, the underlying theory of the exception is that, if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.

*Id.* at 1176 (internal citations omitted).

Here, the Court heard evidence at trial that Chernoy formed HRDS for the sole purpose of purchasing the Le Roy property. (Tr. 827:15-828:2; 863:19-11.) Once the purchase was over, Chernoy testified, HRDS was dissolved as well. (Tr. 862:25-863:11) The Court also heard that Lavelo is a limited liability company, with Chernoy's parents' trust as the members and beneficial owners (Tr. 481:10-13; 481:24-482:1; 624:17-22), and Chernoy as the manager (Tr. 481:18-19). Chernoy testified he is the manager of Lavelo, and Lavelo was the sole managing member of HRDS before HRDS was dissolved. (Tr. 482:11-13; 575:13-16; 576:1-4; 827:15-828:2.) Lavelo is also listed as one of the sellers on the Purchase Agreement between the Abellans and HRDS. (*See* Pl.'s Ex. 2 at 1.)

As such, the Court finds Lavelo (the purchaser) is merely a continuation of HRDS (the seller). The reasoning outlined by the *Vernon* Court supports this conclusion, as it ruled, "the continuation exception to the rule of successor corporate nonliability applies when the [successor] corporation is merely a continuation or reincarnation of [its predecessor]." *Id.* Moreover, the Court finds there has been sufficient evidence proffered at trial to conclude that HRDS may have

been dissolved for the sole purpose of escaping liability for the seller's obligations, as it was not formally dissolved until *after* the sale of the Le Roy property to Plaintiff.[13] The jury did not believe the intentions of Defendant and Chernoy for the sale of the property,[14] and the Court finds the dissolution of HRDS may have been executed in bad faith. For the aforementioned reasons, Defendant's Motion to Alter or Amend Judgment is denied.

### III. Plaintiff's Motion to Alter or Amend Judgment [121]

Plaintiff filed his Motion to Alter or Amend Judgment pursuant to Federal Rules of Civil Procedure 59(e), requesting prejudgment interest in the amount of $164,079.98.[15] (ECF No. 121 at 2-3.) Plaintiff argues he is entitled to prejudgment interest pursuant to the Illinois Interest Act,[16] as the Purchase Agreement in his claim constitutes an "instrument of writing" and the interest award is "readily capable of calculation." *Id.* In response, Defendant asserts it is not required to pay prejudgment interest, as there was a genuine and reasonable dispute regarding the claim, and the caselaw which Plaintiff cites in support of his argument is inapplicable to the situation at hand. (ECF No. 131.) The Court, however, finds in favor of Plaintiff and grants prejudgment interest in the amount of $164,079.68.

This is a suit for breach of contract in federal court by virtue of diversity jurisdiction. The breach of contract claim is governed by Illinois law pursuant to the *Erie* doctrine.[17] "In diversity cases governed by *Erie*, federal courts look to state law to determine the availability of (and rules for computing) prejudgment interest." *Medcom Holding Co. v. Baxter Travenol Lab., Inc.*, 106

---

[13] The sale of the Le Roy property to Plaintiff concluded on June 9, 2015, and HRDS was dissolved on July 10, 2015. (ECF No. 134 at 14.)

[14] Finding that both Lavelo and Chernoy, individually, had committed fraud.

[15] $1,289,341.72 (x) .05 = $64,467.09 (÷) 365 days = $176.62 interest per diem (x) 929 days = $164,079.98.

[16] 815 Ill. Comp. Stat. Ann. 205/2 (West 2018).

[17] The principle that a federal court exercising diversity jurisdiction over a case that does not involve a federal question must apply the substantive law of the state where the court sits. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Black's Law Dictionary 273 (4th pocket ed. 2011).

F.3d 1388, 1405 (7th Cir. 1997) (quoting *Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1333 (7th Cir. 1992)). In Illinois, "[a]bsent an express agreement by the parties, allowance of prejudgment interest is permitted by statute if the amount due is a fixed amount or easily computed." *Bank of Chicago v. Park National Bank*, 640 N.E.2d 1288, 1296 (Ill. App. Ct. 1994) (citing *Cushman & Wakefield of Illinois, Inc. v. Northbrook 500 Ltd. Partnership*, 445 N.E.2d 1313 (Ill. App. Ct. 1983)); 815 ILL. COMP. STAT. ANN. 205/2 (West 1992). If any of these prerequisites are met, then the decision to allow statutory interest lies within the sound discretion of the district court. *Medcom*, 106 F.3d at 1405 (citing *Bank of Chicago*, 640 N.E.2d at 1296).

Here, since there was no clause in the Purchase Agreement as to prejudgment interest, any entitlement to prejudgment interest must be based on the Illinois Interest Act or equitable considerations. *Movitz v. First National Bank of Chicago*, 982 F. Supp. 566, 568-69 (N.D. Ill. 1997). The Illinois Interest Act provides:

> Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due [1] on any bond, bill, promissory note, or other instrument of writing; [2] on money lent or advanced for the use of another; [3] on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; [4] on money received to the use of another and retained without the owner's knowledge; and [5] on money withheld by an unreasonable and vexatious delay of payment.

815 ILL. COMP. STAT. ANN. 205/2 (West 2018). Illinois courts have found that a contract for the sale of real estate constitutes an "instrument of writing" under the Interest Act. *See, e.g., Farwell Construction Co. v. Ticktin*, 405 N.E.2d 1051, 1064-65 (Ill. App. Ct. 1980) (finding "a contract for the sale of realty qualifies as an 'instrument of writing' under the statute"); *Vandercook v. Mayer*, 17 N.E.2d 542 (Ill. App. Ct. 1938) (granting Plaintiff interest on payment owed under a real estate contract). Additionally, the damages in this case are easily computed, as Plaintiff

outlined an exact damages amount in Exhibit 41F presented at trial, which the Court affirmed in its Order granting Defendants' motion for remittitur.  (*See* ECF No. 114 at 7-8.)

### IV.     Plaintiff's Motion for Attorney Fees [122]

Plaintiff filed a Motion for Attorney Fees and Costs pursuant to Federal Rule of Civil Procedure 54(d)(2) and Local Rule 54.1(A), seeking $990,643.41 for attorneys' fees and costs. (ECF No. 122 at 1-2.)  Specifically, Plaintiff requests $690,643.41 for fees and costs incurred through August 24, 2018; $50,000.00 in "anticipated" attorneys' fees; and $250,000 for attorneys' fees "in the case of an unsuccessful appeal."  *Id.* at 2.  Defendant objects to Plaintiff's Motion for Fees, arguing Plaintiff is not entitled to any attorneys' fees, as "it would be inappropriate under Illinois law to find Plaintiff to be the prevailing party for purposes of attorneys' fees."  (ECF No. 132 at 4.)  In the alternative, Defendant argues Plaintiff should be limited to attorneys' fees in the amount of $81,705.86, because only a limited number of Plaintiff's claims went to trial, and Plaintiff was only the "prevailing party on his breach of contract claim."  *Id.* at 6-9.  Finally, Defendant contends that Plaintiff's mutual mistake and fraud claims are "wholly distinct" from his breach of contract claim, and as such, Plaintiff's recovery should be limited to that claim alone. *Id.*  The Court finds the jury verdict weighs heavily in Plaintiff's favor and awards Plaintiff $627,702.15 in attorneys' fees.

Illinois law follows the "American Rule" which requires that each party bear its own attorney's fees and costs.  *Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 227 (7th Cir. 1989) (citing *Kerns v. Engelke*, 390 N.E.2d 859, 865 (Ill. 1979)).  "Contractual fee-shifting clauses, like statutory fee-shifting provisions, however, are exceptions to this rule.  *Id.*; *First Colonial Trust Co. v. H.S. Crocker Co., Inc.*, No. 90 C 3952, 1994 WL 49025, at *5 (N.D. Ill. Feb. 15, 1994).  "Although such clauses should be strictly construed, the decision to award

attorney fees and costs pursuant to a contractual agreement lies within the sound discretion of the trial court." *First Colonial*, 1994 WL 49025, at *5.

"The party petitioning for attorney fees bears the burden of submitting sufficient evidence to support its claim." *Id.* (citing *GMAC Mortgage Corp. v. Larson*, 597 N.E.2d 1245, 1250 (Ill. App. Ct. 1992)). "Absent this proof to guide the court, the petitioner cannot rely on a generalized assumption that a certain amount of fees were incurred." *Id.* (citing *Chesrow v. Du Page Auto Brokers, Inc.*, 557 N.E.2d 1301, 1304 (Ill. App. Ct. 1990)).

Section 13 of the Purchase Agreement provides:

13.　　Attorney's Fees.  In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, the prevailing party shall be entitled to recover all of its costs, including the costs of arbitration, and reasonable attorney's fees in addition to any other relief to which such party may be entitled.

(Le Roy Purchase Agreement, Pl.'s Ex. 2 at 6.)  As such, the contract that Defendant was found to have breached calls for the award of attorney's fees subject to a "reasonableness" standard.

The method for calculating the amount of reasonable fees incurred by a prevailing party was established by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "This calculation, commonly referred to as the 'lodestar' figure, is 'the product of the hours reasonably expended on the litigation multiplied by a reasonabl[e] hourly rate.' " *First Colonial Trust Co. v. H.S. Crocker Co., Inc.*, No. 90 C 3952, 1994 WL 49025, at *12 (N.D. Ill. Feb. 15, 1994) (quoting *Hensley*, 461 U.S. at 433). However, more must be presented than a compilation of hours multiplied by a fixed hourly rate to justify a fee award.  *Id.* (citing *Kaiser v. MEPC American Properties, Inc.*, 518 N.E.2d 424, 427 (Ill. App. Cit. 1987)).  "To determine the reasonableness of attorney fees the court should consider, in addition to the time element, factors such as:

the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client, and whether there is a reasonable connection between the fees and the amount involved in the litigation."

*Id.* (quoting *Kaiser*, 518 N.E.2d at 428). Of these, the most important factors are generally agreed to be the amount involved and the results obtained. *Hensley*, 461 U.S. at 430.

"In addition, both the Supreme Court and the Seventh Circuit have articulated a preference for a holistic definition of 'success' rather than a piecemeal evaluation of each claim." *Centerpoint Energy Services, Inc., v. WR Property Management, LLC*, 2012 WL 780720, at *8 (N.D. Ill. Aug. 30, 2012). "In a lawsuit comprised of several claims, attorneys are expected to spend time on the litigation as a whole, rather than on individual claims." *Id.* (citing *Spanish Action Comm. v. Chicago*, 811 F.2d 1129, 1133 (7th Cir. 1987)). "More important than the success of each issue, therefore, is the 'ultimate result achieved' by the party's counsel, and the lodestar figure may be shifted either up or down to reflect the quality of the results obtained." *Id.* (citing *Hensley*, 461 U.S. at 431). Furthermore, "[a] calculation of attorneys' fees may include a certain amount of time devoted to unsuccessful claims when the successful and unsuccessful claims share 'a common core of facts or related legal theories.' " *Id.* (quoting *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998)). "The general rule is that courts should consider the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended, and acknowledge that these hours will include some time devoted to ultimately unsuccessful claims." *Id.* (citing *Spanish Action Comm.*, 811 F.2d at 1133). "Though this rule cautions against automatic reductions for unsuccessful claims, the court may reduce the amount of fees to account for an unsuccessful claim that required a substantial amount of attorney time." *Id.* (citing *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 643 (7th Cir. 2011)).

In the Motion at hand, Defendant argues (i) Plaintiff is not entitled to any attorneys' fees, as it would be inappropriate under State law to find Plaintiff to be the prevailing party; (ii) Plaintiff's fees should be greatly reduced, as only a limited number of his claims went to trial, Plaintiff was only the "prevailing party" on his breach of contract claim, and Plaintiff's recovery should be limited to his breach of contract claim alone, as the other claims are "wholly distinct" from that claim.

As it relates to an award of attorney's fees, there is no question that Plaintiff is the prevailing party in the matter at hand. "A party can be considered a 'prevailing party' for the purposes of awarding fees when he is successful on any significant issue in the action and achieves some benefit in bringing suit, receives a judgment in his favor[,] or by obtaining an affirmative recovery." *Timan v. Ourada*, 972 N.E.2d 744, 752 (Ill. App. Ct. 2012) (quoting *Grossinger Motorcorp, Inc. v. American National Bank & Trust Co.*, 607 N.E.2d 1337, 1348 (1992)). "To qualify as a prevailing party, a plaintiff must succeed in obtaining some relief from the defendant against whom attorney fees are sought." *Id.* (quoting *Community Consolidated School District No. 54 v. Illinois State Board of Education*, 576 N.E.2d 250 (1991)). "A successful litigant is still considered the prevailing party under a fee-shifting provision even if the judgment is below the amount claimed." *Id.* (quoting *Powers v. Rockford Stop-N-Go, Inc.*, 761 N.E.2d 237 (2001)).

Here, the Parties' Purchase Agreement contains a fee-shifting provision that provides the prevailing party in any litigation is entitled to reasonable attorney's fees and all costs from the losing party. (*See* Pl.'s Ex. 2 at 6.) After a five-day jury trial, Plaintiff obtained judgment against Defendant Lavelo on his claims of mutual mistake, breach of contract, and fraud. (ECF Nos. 100; 114 at 2.) Plaintiff proved these claims by clear and convincing evidence and was awarded nearly two million dollars, which was later reduced by the Court on Defendants' motion for remittitur.

*Id.* The Court rejects Defendant's argument that "both parties have won and lost on different claims," and as such, Plaintiff's award of fees should be nullified. (*See* ECF No. 132 at 3.) The record in this case incontrovertibly demonstrates otherwise.

Additionally, the Court will not reduce Plaintiff's award of attorney's fees for claims that were dismissed prior to trial, as Section 13 of the Purchase Agreement *mandates* attorney's fees to the prevailing party regardless of the survivability of the prevailing party's initial claims.[18] *See Tax Track Systems Corp. v. New Investor World, Inc.*, 478 F.3d 783, 788 (7th Cir. 2007) (shifting the standard of review to "clear error" when analyzing attorney's fees in explicit contract cases). Moreover, segregation of fees is not required under Illinois law when the contract at issue contains a clause which requires the prevailing party recover "reasonable attorney's fees." *See Centerpoint Energy Services, Inc. v. WR Property Management, LC*, 2012 WL 7802720, at *6 (N.D. Ill. Aug. 30, 2012) (holding that "[p]ursuant to contract, the award of costs and fees does not hinge on success on a particular cause of action. The broad nature of [the] contractual provision is easily distinguishable from an award of fees based on a specific recoverable claim."). Accordingly, Defendant's arguments seeking to limit or reduce the amount of Plaintiff's recoverable attorney's fees fail. The Court determines the reasonableness of Plaintiff's attorney's fees as follows.

A high-level approach to attorneys' fees is appropriate in this case, considering the length of litigation and the magnitude of time records submitted by Plaintiff. The Court finds Plaintiff's counsel has charged reasonable and appropriate rates for their work in this litigation. Plaintiff's attorneys and paralegals have mostly billed at rates between $150 and $400 per hour, and basic tasks have typically been performed by employees charging lower hourly rates. The attorneys (on both sides) have pursued this litigation with great skill and professionalism. It also bears noting

---

[18] "[T]he prevailing party shall be entitled to recover . . ."

that Defendants may have explored settlement negotiations earlier in the litigation and incurred charges significantly less than the verdict, prejudgment interest, and costs and fees awarded here.

That said, the Court will not award prospective attorneys' fees in *any amount* and is confounded by Plaintiff's request for reimbursement in the amount of $250,000.00 for services not yet rendered.[19] (ECF No. 122 at 10.) Additionally, the Court reduces Plaintiff's fee award for the months of July 2018 and August 2018 by half,[20] as Plaintiff's post-trial motions would constitute— at most—50 hours of attorney and paralegal labor. Finally, since online research costs are a component of attorney's fees in the Seventh Circuit,[21] the Court fails to award Plaintiff $2,950.67 for such expenses, as Plaintiff has failed to proffer documentation that demonstrates said fees were reasonably incurred for the purpose of litigation.[22] (*See also infra* "Online Research" costs analysis.) Accordingly, Plaintiff is awarded $627,702.15 in attorneys' fees.

## V. Plaintiff's Motion for Bill of Costs [128]

Plaintiff filed his Bill of Costs pursuant to Federal Rule of Civil Procedure 54(d) and Local Rule 54.1, seeking $44,920.51 in total costs. (ECF No. 128). Defendant objects to Plaintiff's request, arguing the majority of Plaintiff's costs are not taxable under federal statute and Plaintiff should be awarded, at most, $3,572.74 in total costs. (ECF No. 138.) Plaintiff responds by asserting he is entitled to *all of his costs* pursuant to Section 13 of the Purchase Agreement and presumes the language in the Agreement alone controls the award of costs. (ECF No. 143 at 2-4.)

---

[19] Plaintiff also fails to support his request with any state or federal caselaw.
[20] Plaintiff's request for $30,601.50 (ECF No. 122-1 at 6), is reduced by 50% to $15,300.75.
[21] *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994); *Montgomery v. Aetna Plywood, Inc*., 231 F.3d 399, 409 (7th Cir. 2000).
[22] Listing "On-Line Services" with a corresponding dollar amount is insufficient documentation for an award of fees.

The Court credits arguments by both Parties on the issue and awards Plaintiff total taxable costs in the amount of $29,061.28.[23]

"[C]osts that may be recovered pursuant to Rule 54(d)(1) are specified in 28 U.S.C. § 1920." *Burke v. Burlington Northern*, No. 12-1161, 2015 WL 4999853, at *1 (C.D. Ill. Aug. 21, 2015) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437, 441 (1987)). Recoverable costs do not include every out-of-pocket expense that might be incurred by a party in the course of litigation. *Telular Corp. v. Mentor Graphics Corp*., No. 01 C 431, 2006 WL 1722375, at *1 (N.D. Ill. June 16, 2006). To be recoverable, a particular expense must fall into one of the categories of costs statutorily authorized for reimbursement. *Cefalu v. Village of Elk Grove*, 211 F.3d 427 (7th Cir. 2000). However, "[i]t is possible for some out-of-pocket expenses that do not qualify under § 1920 to be awarded to the prevailing party as a legitimate component of attorneys' fees under a fee shifting statute or contract clause." *Telular*, 2006 WL 1722375, at *1.

Since Illinois law governs the contract between the Parties, it also applies in assessing the reasonableness of fees. *Chamberlain Mfg. Corp. v. Maremont Corp*., No. 92-C-0356, 1995 WL 769782, at *8 (N.D. Ill. Dec. 29, 1995); *Cintas Corp. v. Perry*, 517 F.3d 459, 466-70 (7th Cir. 2008). Under Illinois law, the starting point for any interpretation of a contract clause is the plain language of that clause. *LaSalle Nat'l Bank v. Service Merchandise Co., Inc*., 827 F.2d 74, 78 (7th Cir. 1987). Here, the plain language of Section 13 of the Purchase Agreement expressly requires Defendant to indemnify Plaintiff for "all of its costs to . . . which [Plaintiff] may be entitled." [24] (Pl.'s Ex. 2 at 6.)

---

[23] Fees of the Clerk ($400.00); Fees for service of summons and subpoena ($3,640.88); Fees for printed or electronically recorded transcripts necessarily obtained for use in the case ($8,268.31); Fees for witnesses ($310.00); Fees for copies ($180.15); Shipping expenses ($186.08); Counsel travel expenses ($12,265.93); Plaintiff's travel expenses ($2,466.65); and Witness travel expenses ($1,343.28).

[24] Neither party disputes that Plaintiff is the "prevailing party" as it applies to an award for costs.

However, "the existence of a contractual provision obligating one party to pay attorney fees does not relieve the other of its burden to establish the reasonableness of the amount requested," the determination of which is left to the sound discretion of the trial court. *Kaiser v. MEPC American Properties, Inc.*, 518 N.E.2d 424, 427-28 (Ill. App. Ct. 1987). The party seeking the fees, bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness. *Id.* at 427. As such, "the petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged thereof." *Id.* "It is incumbent upon the petitioner to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated." *Id.* at 427-28.

"Once presented with these facts, the trial court should consider a variety of additional factors such as the skill and standing of the attorneys . . . the usual and customary charges for comparable services . . . and whether there is a reasonable connection between the fees and the amount involved in the litigation. *Id.* at 428. Upon being presented with this information, the trial court determines the reasonable fees in the case. *Chamberlin*, 1995 WL 769782, at *8 (citing *Harris Trust and Savings Bank v. American Nat'l Bank and Trust Co.*, 594 N.E.2d 1308, 1312 (Ill. App. Ct. 1992)).

Here, Defendant disputes the calculations outlined in Plaintiff's Bill of Costs and argues certain costs should not be awarded because they are outside the parameters of 28 U.S.C. § 1920 (e.g., *pro hac vice* admission fees, travel expenses for counsel, shipping fees, online research expenses, telephone charges, and jury consultant fees), or that the costs have not been reasonably calculated (e.g., fees for service of summons and subpoenas, transcript costs, and printing fees). (*See* ECF No. 138 at 3-5.)

As a preliminary matter, the Court recognizes the federal statute outlining the scope of costs and fees, 28 U.S.C. § 1920, does not apply to the present motion. *See Cintas Corp. v. Perry*, 517 F.3d 459, 470 (7th Cir. 2008) (holding that under contract circumstances analogous to the present scenario, "entitlement to litigation costs and fees is contractual, not statutory; [and] limitations imposed by statute and rule are inapplicable"). Rather, contract interpretation provisions and fee award guidelines under Illinois law apply. *Id.* at 465-70. That said, the Court finds that some of the fees outlined in Plaintiff's Bill of Costs are unreasonable, unsubstantiated, or fail to draw a reasonable connection to the litigation. Those costs are addressed in turn.

**Plaintiff's Travel Expenses**

Plaintiff requests $7,860.48 in travel expenses from Defendant as part of his costs. (ECF No. 128 at 3.) Defendant asserts that Plaintiff fails to substantiate his claim with documentation, and as such, argues that reimbursement for Plaintiff's travel expenses is an unreasonable expense which Defendant should not have to incur. (ECF No. 138 at 5.) Plaintiff has submitted documentation that reflects $901.12 in charges for airfare and a receipt from the Courtyard Hotel for (presumably) two rooms in the amounts of $1,565.53 and $1,468.46. (ECF No. 143-10 at 5.) Certainly, Plaintiff's presence at trial—and arrival in Peoria, Illinois a few days prior to trial—was both reasonable and necessary for his case. The Court fails to find anything extraordinary in these costs. However, Plaintiff will only be allowed taxable costs for *his* room, which the Court has delineated as the higher of the two fees.[25] Accordingly, Plaintiff is awarded costs for airfare and hotel stay in the amount of $2,466.65.

---

[25] Plaintiff includes a 10-day room charge for Ms. Kane in his Response. This expense is denied, in part, under the Court's Witness Travel Expenses analysis.

**Witness Travel Expenses**

Plaintiff requests reimbursement for travel expenses for his expert witness, Margaret Kane, in the amount of $4,298.48. (ECF No. 143 at 3-4; 147-150.) Defendant argues Ms. Kane's airfare and lodging expenses are excessive and not reasonably related to the time that Ms. Kane testified in court. (ECF No. 138 at 5.) In fee-shifting contract cases, the prevailing party is entitled to those expert witness fees that were reasonably necessary. *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 757 N.E.2d 1271, 1281 (Ill. App. Ct. 2001). Ms. Kane testified in court on Plaintiff's behalf on June 18, 2018. (*See* ECF No. 110.) Thus, the reasonable costs for Ms. Kane's airfare, lodging, and transportation for two days is taxable to Defendant.[26] Accordingly, Plaintiff is awarded expert witness travel expenses in the amount of $1,393.28.[27]

**Counsels' Travel Expenses**

Plaintiff requests reimbursement for travel expenses for his counsel in the amount of $15,046.07. (ECF No. 128 at 3.) Defendant argues these costs are not taxable. (ECF No. 138 at 5.) The Court has found that *all costs* are taxable to Defendant pursuant to Section 13 of the Parties' Purchase Agreement, subject to a reasonableness standard determined by the Court. Furthermore, Illinois "Supreme Court Rule 219(e) provides, '[t]he court may, in addition to the assessment of costs, require the party voluntarily dismissing a claim to pay an opposing party or parties reasonable expenses incurred in defending the action including but not limited to discovery expenses, opinion witness fees, reproduction costs, travel expenses, postage, and phone charges.'" *J.B. Esker & Sons*, 757 N.E.2d at 1279.

---

[26] There is nothing in the record that indicates the specific day of expert witness testimony was not easily ascertainable or subject to advanced agreement of the Parties.
[27] Based on the airfare outlined in ECF No. 138-2 at 2, two days of lodging, and two days of car rental.

While the fee-shifting scenario in *J.B. Esker & Sons* is not entirely analogous to the situation at hand, shifting payment of counsels' travel expenses to the Defendant would place Plaintiff in the position he would have been in had the other terms of the contract been performed. *See generally, Id.* at 1280 ("Shifting the payment of expert witness fees to breaching party would place the prevailing party in the position it would have been in had the other terms of the contract been performed.") Moreover, following the plain language of the contract and awarding costs in the form of travel expenses is consistent with the award of compensatory damages in this case. *Id.* at 1280-81. Plaintiff, however, will not be reimbursed for travel/lodging expenses of parties not listed as part of his legal team on the case docket, nor justified in his Response. [28] (*See, e.g.*, ECF No. 143-9 at 48-51.) Accordingly, Plaintiff is awarded costs for counsels' travel expenses in the amount of $12,265.93.

**Jury Consultant**

Plaintiff requests reimbursement for the cost of a jury consultant in the amount of $3,022.50. (ECF No. 128 at 3.) Defendant argues the fee for a jury consultant is not taxable. (ECF No. 138 at 4.) Plaintiff fails to provide any argument and/or caselaw to support his request for reimbursement of a jury consultant fee. Accordingly, the Court fails to award Plaintiff costs for such an expense.

**Online Research**

Plaintiff requests reimbursement for online research fees in the amount of $2,950.67. (ECF No. 128 at 3.) Defendant argues online research fees are not taxable. (ECF No. 138 at 5.) The Seventh Circuit has been clear on the question of whether online research fees are taxable as costs; it held:

---

[28] Plaintiff's Response fails to explain room charges under the name of Kim Lemay totaling $2780.14 for June 11, 2018, through June 19, 2018, and the Court will not speculate as to the reasoning behind the charges.

> [C]omputer research costs are more akin to awards under attorney's fees provisions than under costs. In fact[,] such costs are indeed to be considered attorney's fees. The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee. In both cases the total costs are attorney's fees and may not be recovered as "costs."

*Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994) (internal citations omitted); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000). Accordingly, the Court addresses online research costs in the section dedicated to Plaintiff's Motion for Attorney Fees, *supra*, and declines to award online research fees as a component of costs.

### Printing, Shipping, and Telephone Charges

Plaintiff requests reimbursement for printing, shipping, and telephone charges in the amount of $2,677.00. (ECF No. 128 at 1, 3.) Defendant objects asserting fees for shipping and telephone charges are not taxable, and that Plaintiff fails to substantiate his printing fees. (ECF No. 138 at 4-5.) Because Plaintiff has failed to provide sufficient information for the Court to determine the reasonableness of these fees, the Court limits Plaintiff's award to $105.69 for printing, shipping, and telephone charges.

Reasonable costs for printing, shipping, and telephone charges are recoverable in fee-shifting arrangements outlined in contract clauses. *See J.B. Esker & Sons, Inc.*, 757 N.E.2d at 1277 ("In the absence of an express provision for the amount of fees, under a general contract providing for attorney fees, an attorney is entitled to be paid for the services rendered as shown by the evidence."). However, the Court finds that Plaintiff has failed to substantiate his printing and telephone fees with sufficient information to justify reimbursement for those costs. Proffering an invoice that outlines costs for "Photocopies" or "Telephone - Long Distance" with a corresponding

dollar amount is insufficient. (*See* ECF No. 143-8 at 1-13.) The same can be said for Plaintiff's request for shipping fees, with the exception of $186.08 in shipping costs.[29] Accordingly, the Court awards Plaintiff $186.08 for printing, shipping, and telephone costs.

**Clerk Fees**

Plaintiff seeks reimbursement in the amount of $626.00 in fees paid to the Clerk. (ECF No. 128 at 1.) Defendant objects to $226.00 of these fees as non-taxable. The Court fails to find it reasonable and necessary to reimburse Plaintiff for the *pro hac vice* fee charged to his counsel to practice in this jurisdiction. *See Olesky v. General Electric Company*, No. 13-CV-1135, 2016 WL 7217725, at *2 (N.D. Ill. Dec. 12, 2016) (holding "[t]he weight of authority in this Circuit . . . indicates that courts normally decline to award *pro hac vice* fees."). This is also the practice of "the majority of courts" throughout the country. *Id.* (quoting *Awad v. Ziriax*, 2014 WL 1572804, at *1 n.2 (W.D. Okla. Apr. 17, 2014)). Accordingly, Plaintiff is limited to $400.00 in filing fees paid to the Clerk as recoverable costs.

**Fees for Service of Summons and Subpoena**

Plaintiff seeks reimbursement for fees related to service of summons and subpoena in the amount of $3,710.88. (ECF No. 128 at 1.) Defendant objects asserting Plaintiff fails to provide substantiation for said fees and that the amount requested appears extraordinarily large. (ECF No. 138 at 4.) The Court acknowledges that Defendant JC 123 Holdings, LLC was dismissed by Order on March 22, 2018 (ECF No. 66), and that Defendants David Zacharia, DZ Net Lease Realty, and CSJR Phoenix AZ, LLC were dismissed by stipulation on April 3, 2018 (ECF No. 69).

---

[29] FedEx Shipping Costs: Margaret Kane ($51.51) + McLean County Clerk ($13.20) + Clerk of Court ($20.23) + Margaret Kane II ($20.75) + Connie Nims ($80.39).

"The trial court may award only reasonable fees, which consist of 'reasonable charges for reasonable services.' " *Northbrook Bank & Trust Co. v. Abbas*, 102 N.E.3d 861, 881 (Ill. App. Ct. 2018) (quoting *McHenry Savings Bank v. Autoworks of Wauconda, Inc.*, 924 N.E.2d 1197 (Ill. App. Ct. 2010)).  Here, Plaintiff fails to demonstrate, and the Court fails to find, fees for service of summons and subpoena on dismissed Defendant JC 123 Holdings, LLC to be reasonable and necessary for the litigation. As such, Plaintiff is awarded fees for service of summons and subpoena on Defendants in the amount of $3,640.88.

**Transcript Fees**

Plaintiff seeks reimbursement for fees related to the production of transcripts in the amount of $8,536.76.  (ECF No. 128 at 1.)  Defendant objects to $6,838.26 of those costs, arguing Plaintiff has failed to provide substantiation for those transcript fees.  (ECF No. 138 at 4.)  Defendant also cites a Northern District of Illinois opinion[30] for the proposition that only the cost of reporter fees at rates provided by the Judicial Conference of the United States are allowable, and only the fees for testimony and not additional fees for indices, exhibits, or delivery.  *Id.*  Here, Defendant is misguided.  The case that Defendant cites is inapplicable to the scenario at hand, as the contract clause in the Purchase Agreement controls the award of costs, and Plaintiff must only pass the reasonable and necessary criterion in order to be reimbursed.

"A prevailing party may recover costs for deposition transcripts 'necessarily obtained for use in the case.'" *Lewis v. City of Chicago*, 2012 WL 6720411, at *5 (N.D. Ill. Dec. 21, 2012) (citing 28 U.S.C. § 1920(2)).  "[T]ranscripts need not be absolutely indispensable in order to provide the basis of an award of costs; it is enough if they are 'reasonably necessary.' " *Lewis*, 2012 WL 6720411, at *5 (quoting *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993)).  Additionally,

---

[30] *Bagwe v. Sedgwick Claims Management Services, Inc.*, No. 11 CV 2450, 2015 WL 351244, at *3-4 (N.D. Ill. Jan. 27, 2015).

"[c]osts for exhibits are recoverable if the exhibits were reasonable and necessary, in that they aid in understanding an issue in the case." *Nilssen v. Osram Sylvania, Inc.*, No. 01 C 3585, 2007 WL 257711, at *3 (N.D. Ill. Jan. 23, 2007) (citing *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 428 (7th Cir. 2000)).  Finally, where a trial is lengthy and complex, costs associated with daily trial transcripts may be recovered. *Majeske v. City of Chicago*, 218 F.3d 816, 825 n.3 (7th Cir. 2000).

The Court finds the deposition transcripts for which Plaintiff seeks reimbursement were reasonably necessary to the case.  The Court also finds costs for trial transcripts to be recoverable, as the trial was somewhat lengthy and complex.  However, the Court fails to award transcript costs for copies of exhibits, as Plaintiff fails to make any argument(s) as to why such costs were necessary, and also fails to indicate whether Plaintiff already had any of the exhibits in his possession.  Accordingly, Plaintiff is awarded $8,268.31 for transcript costs.

## CONCLUSION

For the reasons stated above, Defendant's Motion for New Trial and Motion for Judgment as a Matter of Law are DENIED.  Plaintiff's Motion for Prejudgment Interest is GRANTED in the amount of $164,079.98.  Plaintiff's Motion for Attorney Fees is GRANTED IN PART AND DENIED IN PART and Plaintiff is awarded fees in the amount of $627,702.15.  Plaintiff's Motion for Bill of Costs is GRANTED IN PART AND DENIED IN PART and Plaintiff is awarded costs in the amount of $29,061.28.

ENTERED this 29th day of November 2018.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge